IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN M. CARTER and     :     CIVIL ACTION
MICHELLE CARTER     :
     :
    v.     :     NO.  06-5388
     :
RYOBI TECHTRONICS, et al.     :

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**     **May 9, 2008**

Defendants Ryobi Techtronics and Sears Roebuck ask me to dismiss this case for lack of prosecution because Plaintiff Steven Carter and his attorney Michael Burke have failed to prosecute this case and comply with the Court's instructions.  Mr. Carter and Mr. Burke argue the case should not be dismissed because they have complied with the Court's instructions to the best of their abilities.  Because Mr. Carter and Mr. Burke have both failed to prosecute this case and squandered the Court's numerous opportunities to comply, the case is dismissed and Mr. Burke shall pay the excess costs Sears and Ryobi incurred.

## FACTS

On December 8, 2006, the Carters initiated a federal law suit against Ryobi Techtronics, Sears Roebuck and Company, KCD, and Craftsman.  Mr. Carter alleged he properly used the Craftsman 5-1/2" trimsaw, but still lost his first left index finger.  Mr. Carter allegedly became "sick, sore, nervous, lame, and disordered." Compl. ¶ 9.  He alleges negligence, strict products liability, and breach of warranty.  Michelle Carter alleges loss of consortium.

Ryobi and Sears answered the Complaint, and the Court held a Rule 16 Conference on August 9, 2007.[1]  Trial was set for February 12, 2008 with discovery concluding on November 9, 2007.  Since August 9, 2007, however, despite of defense counsel's attempts, Mr. Burke  has failed

---

[1] Defendants Defendants KCD and Craftsman have not answered the complaint.

to file Rule 26 disclosures,[2] answer interrogatories, telephone calls, emails, any type of

---

[2] Rule 26 reads:

> (A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
>> (I) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>>
>> (ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>>
>> (iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
>>
>> (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.
>
> . . . . .
>
> (3) Pretrial Disclosures.
>
> (A) In General. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:
>
>> (I) the name and, if not previously provided, the address and telephone number of each witness--separately identifying those the party expects to present and those it may call if the need arises;
>>
>> (ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and
>>
>> (iii) an identification of each document or other exhibit, including summaries of other evidence--separately identifying those items the party expects to offer and those it may offer if the need arises.

2

correspondence, and all discovery requests.  Following the Court's standard operating procedures, Defense Counsel Margaret Wenke contacted the Court in late September to schedule a teleconference to address Mr. Burke's lack of response.  The Court scheduled the teleconference for October 4, 2007.[3]  This initiated the first of *five* teleconferences the Court would ultimately schedule to address Mr. Burke's and Mr. Carter's lack of participation and prosecution.  Defense Counsel Lisa Cauley participated in the call and explained all of Mr. Burke's failures since the Rule 16 Conference on August 9, 2007.  Mr. Burke responded Mr. Carter had been medically unavailable for the past couple of months, thus preventing him from answering the interrogatories.  The Court instructed Mr. Burke to provide defense counsel with the information they requested.

Mr. Burke ignored the Court's instructions, and Ms. Cauley had to initiate another teleconference for October 31, 2007 to discuss the same problem.  The Court instructed Mr. Burke again to provide the necessary discovery.  Instead of following the Court's standard operating procedures and requesting a teleconference, Mr. Burke filed a motion for an extension of deadlines. The Court held a teleconference on December 11, 2007, and Ms. Cauley informed the Court Mr. Burke had disregarded the Court's previous instructions and failed to provide her with any discovery. This Court then instructed Ms. Cauley to file a motion to dismiss for lack of prosecution.

Ms. Cauley filed the motion with exhibits detailing the numerous attempts in contacting Mr. Burke.  An exhibit demonstrated Mr. Burke's sole correspondence with defense counsel was a demand letter on November 26, 2007, warning the demand would increase after 14 days if not accepted.  Mr. Burke filed a response to the motion to dismiss disputing the numerous attempts in contacting him, although he had never disputed these same representations during the previous three

---

Fed. R. Civ. P. 26(a); (c).

[3] The Court had to reschedule this initial conference because Mr. Burke was unavailable on the scheduled date and failed to timely notify the Court.

teleconferences.[4]  Mr. Burke explained he had been unable to participate in the prosecution of this case because his father had been terminally ill in the hospital and the Carters were either medically unavailable or busy working for that entire period.

The Court held oral argument on January 29, 2008 on this pending motion.  Mr. Burke arrived late to the hearing, which was to decide the fate of his client's case.  At this hearing, Mr. Burke explained Mr. Carter's medical unavailability made it difficult for Mr. Burke to answer any discovery request.  He also explained his client was very difficult to contact.  Mr. Burke indicated he had made a "yeoman's effort" to contact Mr. Carter including visiting Mr. Carter at his home. Despite these difficulties with Mr. Carter, Mr. Burke represented to the Court Mr. Carter was fully able to participate in the matter as of that day because he was taking the appropriate medication.  Mr. Burke stated these representations were based only on Mr. Carter's statements, not on any independent medical records or evaluations.   In arguing for a less severe sanction, Mr. Burke suggested placing the case on "a short leash." In other words, if Mr. Carter did not participate or comply with the Court's deadlines, the case would be dismissed.

Ms. Cauley reiterated the litany of Mr. Burke's outstanding deficiencies: Mr. Burke's failure to file Rule 26 disclosures, to answer interrogatories, or to return phone calls, emails, or any type of correspondence.  Ms. Cauley pointed out Mr. Burke's inconsistent excuses for non compliance: Mr. Carter's medical unavailability; Mr. Carter completing odd jobs; and Mr. Burke's father in the hospital.   She also pointed out that as of that day, the day the case could be dismissed, Mr. Burke still failed to file Rule 26 disclosures. She argued Ryobi and Sears had been prejudiced because they lacked any information and were "unable to mount a defense" almost a year after the complaint was filed.

---

[4] Mr. Burke typed his response and handwrote last-minute corrections before filing with the Court.

The Court then ordered Mr. Burke to bring his clients and all medical documentation verifying Mr. Carter's previous medical unavailability for depositions or an Independent Medical Examination (IME) to the subsequent hearing on February 7, 2008 at 1:30 p.m.  The Court also instructed Ms. Cauley to tally the excess costs incurred compelling discovery.  Mr. Burke then withdrew the loss of consortium claim, requiring only Mr. Carter's appearance and documentation explaining his unavailability.

On February 7, 2008, Mr. Burke and Mr. Carter appeared before the Court to determine the validity of Mr. Carter's alleged medical unavailability.  The Court requested all the medical documents.  Mr. Burke initially produced a photocopy of a February 6, 2008 letter from a chiropractor who had "recently" examined Mr. Carter.  In the letter, the chiropractor stated based on his conversations with Mr. Carter and Mr. Burke, Mr. Carter was unable to help Mr. Burke because of Mr. Carter's pain and the effects of Percocet, the pain medicine.  He then stated based on these conversations and Mr. Carter's blood pressure, Mr. Carter should not participate in stress-inducing litigation and the Court should stay the litigation for 90 days.

Mr. Burke was addressing the Court when a courier arrived delivering a photocopy of another physician's letter.  This letter was from Mr. Carter's treating physician, Dr. Allen, and it was dated February 7, 2008.  Dr. Allen's letter reiterated how Mr. Carter's pain and physical condition had rendered Mr. Carter unavailable to assist Mr. Burke since August, 2007, and continued to render him unavailable for the next 90 days.  The treating physician referenced the chiropractor's opinion and suggestion.

The Court declared the photocopied letters inadequate and unacceptable because of their suspicious authenticity and content.[5]  Mr. Burke argued it had been very difficult to obtain these

---

[5]  The Court stated: "Why are you bringing me faxed copies of these reports?"  "I do not know if these are even legitimate letters."

letters given the proximity of the hearing date.  Instead of dismissing the case, the Court took the opportunity to emphasize to Mr. Carter the importance and necessity of his participation in this case and compliance with the Court's orders.  The Court spoke directly to Mr. Carter and explained the pending motion and the implications of a failure to comply with the Court's orders.  Mr. Carter stated he understood.

In giving Mr. Carter and Mr. Burke one last chance, the Court gave them "60 days to get this case moving."  By February 19, 2008, Mr. Burke was ordered to provide Ms. Cauley all medical, income, and workers compensation evidence from the last five years, Rule 26 disclosures, and answers to interrogatories, which he was originally served on August 10, 2007.  Mr. Burke then stated he was uncertain as to the completeness of Mr. Carter's worker's compensation file.  The Court instructed Mr. Burke that regardless of the difficulty, he had to obtain all the necessary documents and provide them to Ms. Cauley.  Mr. Carter's deposition was scheduled for March 4, 2008 and his IME was scheduled for the end of February given the physician's availability.

In discussing sanctions, Mr. Burke, in the presence of Mr. Carter, continued to blame Mr. Carter's medical unavailability for his failure to provide discovery.  Mr. Burke also disputed some of Ms. Cauley's charges arguing they would have occurred regardless.

The Court scheduled a teleconference addressing compliance for March 6, 2008 at 10:00 am. The Court again warned both Mr. Carter and Mr. Burke on the record and in its order that failure to comply with the Court's instructions would result in dismissal.  The Court warned: "I want no excuses.  I'm giving you one last opportunity to get back on track."

During the March 6, 2008 teleconference, Ms. Cauley informed the Court Mr. Carter had failed to appear for his IME and failed to reschedule.  She also informed the Court Mr. Burke had failed to provide all the necessary documentation as instructed by the Court.  The worker's compensation documents were still missing.  Mr. Burke, in response, merely stated he had provided

all he had.

The Court then held another teleconference on April 17, 2008 to discuss the compliance status of the Court's pending orders.  Ms. Cauley informed the Court neither Mr. Burke nor Mr. Carter had attempted to reschedule the IME, and Mr. Burke had failed to produce the missing documents discussed at the previous teleconference along with the Rule 26 disclosures.

**DISCUSSION**

Federal Rule of Civil Procedure 41(b) allows parties to move for dismissal for lack of prosecution.[6]  Federal Rule of Civil Procedure 37 also permits courts to dismiss cases for failure to follow a court's order. Fed. R. Civ. P. 37(a).[7]  In deciding dismissal under Rules 37 and 41(b), courts must consider the: (1) extent of the party's personal responsibility; (2) prejudice to adversary caused

---

[6]  The rule reads:

> Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

[7] The rule reads:

> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> > (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> > (iii) striking pleadings in whole or in part;
> > (iv) staying further proceedings until the order is obeyed;
> > (v) dismissing the action or proceeding in whole or in part;
> > (vi) rendering a default judgment against the disobedient party; or
> > (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(a).

by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Courts can decide to dismiss without applying every single factor, but must still consider them. *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir.1988). Dismissal is a harsh remedy and should be reserved for only the most extreme cases, as "the policy of the law is to favor the hearing of a litigant's claim on the merits." *Spain v. Gallegos*, 26 F.3d 439, 454 (3d Cir. 1994) (citing *Marshall v. Sielaff*, 492 F.2d 917, 918 (3d Cir. 1974)). Courts may also dismiss cases with prejudice under Fed. R. Civ. P. 41(b) or under their inherent power "so as to achieve the orderly and expeditious disposition of cases." *Id.* (citations omitted).

Examining this circuit's application and balancing of the *Poulis* factors in three noteworthy cases: *Poulis*, *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984) and *Dunbar v. Triangle*, 816 F.2d 126, 129 (3d Cir. 1987), will demonstrate Mr. Carter's and Mr. Burke's conduct is far worse and deserving of both dismissal and assessing excessive fees. In *Poulis*, the Third Circuit affirmed the dismissal despite the fact the Poulis's were not personally responsible. *Poulis*, 747 F.2d at 869-70. The Third Circuit affirmed the dismissal even though it would have fined the Poulis's attorney, for failing to answer interrogatories or timely filing the pretrial statement instead. *Id.* In *Scarborough,* the Third Circuit vacated and remanded because dismissal was based solely on plaintiff's attorney's failure to amend an unclear pretrial statement. *Scarborough*, 747 F.2d at 875. Plaintiff's attorney had complied with all the other court's orders, rules of civil procedure, and discovery requests, and there was no evidence of the party's personal responsibility. *Id.* In *Dunbar*, a 41(b) dismissal was vacated because there was no evidence the plaintiff knew "of her counsel's defaults or otherwise bore some personal responsibility for his professional irresponsibility." 816

8

F.2d at 129.  The district court had dismissed the case because it found Mr. Green, Dunbar's attorney, had acted in bad faith.  *Id.* at 128.  In its opinion, the Third Circuit instructed it was necessary for district courts to make clients/parties aware of the 41(b) motion and  hearing "and the possible jeopardy to his or her legal interests." *Id.* at 129.

In granting Ryobi's and Sears's motion to dismiss, this Court has considered all the *Poulis* factors and finds five militate in favor of dismissal and excessive fees.  The evidence presented to the Court demonstrates: both Mr. Carter and Mr. Burke are personally responsible; Ryobi and Sears have been prejudiced by Mr. Carter and Mr. Burke's conduct; the history of dilatory conduct began nine months ago and continues to this day; and both dismissal and excessive fees are appropriate sanctions.  The first *Poulis* factor requires evaluating the party's personal responsibility.  Although no one factor is dispositive, finding the party personal responsible for the delay is an important factor in dismissing under 41(b).  *See Poulis*, 747 F.2d at 864; *Scarborough*, 747 F.2d at 875; *Dunbar*, 816 F.2d at 129.

In this case, Mr. Carter's failure to participate or comply with the Court's order resembles "flagrant bad faith" and merits dismissal of his case.  *Poulis*, 747 F.2d at 868 (citing *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976)).  Unlike Dunbar, the Poulis, and Scarborough, the Court, here, *personally* instructed Mr. Carter of his need to participate in the prosecution of this case and his need to comply with the Court's orders.  As in *Dunbar,* the Court ensured Mr. Carter was present at the second 41(b) hearing, and it personally informed him numerous times that failure to comply with the Court's instructions would result in dismissal. *Dunbar,* 816 F.2d at 129.  Mr. Carter did attend his deposition, but failed to appear at his IME.  He provided no notice or explanation despite being warned of the potential dismissal of his case.  Even with this instruction and warning, Mr. Carter failed to reschedule another appointment within six

weeks of the Court's status teleconference on March 6, 2008.[8]

Mr. Burke's personal responsibility is also to blame. Mr. Burke's "callous disregard" of his responsibilities disgraces the bar and this Court. To this day, about nine months after the Rule 16 Conference, Mr. Burke has failed to: provide Rule 26 disclosures; produce all the requested evidence as ordered by the Court; and return to defense counsel's telephone calls, emails, and mail. *See* Mot. to Dismiss. Ex.'s [A-L]. Instead of providing this information, Mr. Burke took the time to type out and send defense counsel a demand letter, warning the demand would increase if not accepted within 14 days. Counsel's unexcused conduct could justly result in dismissal of a party's claim, but courts should deliver a sanction "directly on the delinquent lawyer, rather than on a client who is not actually at fault." *Adams v. Trustees of N.J. Brewery Employees' Pen. Trust Fund*, 29 F.3d 863, 873 (3d Cir. 1994) (citations omitted).

Unlike the Poulis's attorney, Mr. Burke has received numerous opportunities to comply with the Court's orders. *See Poulis*, 747 F.2d at 868. Mr. Burke, here, received three warnings his failure to comply would result in dismissal. Since Defendants filed their motion to dismiss for lack of prosecution on December 17, 2007, the Court has provided Mr. Carter and Mr. Burke two oral arguments, two teleconferences, and more than four months to comply with the pending discovery requests. Instead of taking advantage of these opportunities, both Mr. Burke and Mr. Carter have squandered them by defying the Court's instructions.

The next factor is the resulting prejudice from Mr. Carter's and Mr. Burke's conduct. Prejudice encompasses the following: "irretretrievable loss of evidence, the inevitable dimming of witnesses' memories, the excessive and possibly irremediable burdens or costs imposed on the opposing party, deprivation of information through non-cooperation with discovery, and costs

---

[8] Prior to these warnings, it was also Mr. Carter's alleged medical unavailability or unavailability due to working "odd jobs" that allegedly prevented Mr. Burke from answering interrogatories.

expanded obtaining court orders to force compliance with discovery." *Adams*, 29 F.3d at 874 (citing *Scarborough*, 747 F.2d at 876). Prejudice need not be "irremediable harm that could not be alleviated by [the] court's reopening discovery and postponing trial." *Id* "The burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003) (citing *Curtis T. Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 693-94 (3d Cir. 1988)). Failing to answer interrogatories and forcing defense counsel into filing motions to compel answers cause prejudice. *Poulis*, 747 F.2d at 868.

Ryobi and Sears have been prejudiced because of Mr. Carter's and Mr. Burke's defiant conduct. It took six months, three teleconferences, and two oral arguments with the Court for Mr. Burke to answer the interrogatories, produce part of the requested medical and financial files, and to produce Mr. Carter for a deposition. The Court's intervention, however, has failed to prompt Mr. Burke to file Rule 26 disclosures, produce all the medical documentation and workers compensation information, and to force Mr. Carter to attend his IME.

Mr. Burke argues Ryobi and Sears have not suffered any prejudice because they have all the evidence he possesses. The sole fact Mr. Burke has failed to file Rule 26 disclosures refutes his statement. Because of Mr. Burke's failure to file the Rule 26 disclosures, Ryobi and Sears still do not know the individuals with discoverable information; the computation of damages; or Mr. Carter's intended fact witnesses nine months after the Rule 16 conference. Fed R. Civ. P. 26(a)(c). There has also been no evidence Mr. Burke attempted to provide Ryobi and Sears or defense counsel with this information by email, telephone call, or mail. Mr. Burke's failure to file Rule 26 disclosures and continuous disregard for the Court's orders have impeded Ryobi and Sears's ability "to prepare effectively a full and complete trial strategy." *Ware*, 322 F.3d at 222.

In addition to their inability to effectively prepare for trial, Ryobi and Sears have been

prejudiced by incurring additional costs through filing motions, obtaining court orders, and reserving time for oral arguments and teleconferences.   Nine months after the Rule 16 conference, Ryobi and Sears have been billed $6,193.78 for five teleconferences, two oral arguments, the time necessary to prepare for those proceedings, and all the attempts made to obtain the discovery.

The third factor evaluates the dilatory conduct "over the life of the case."   *Adams*, 29 F.3d at 875 (referencing *Dyothernm Corp. v. Turbo Machine Co.*, 392 F.2d 146 (3d Cir. 1968)).   A history of dilatoriness includes "[e]xtensive or repeated delay or delinquency . . . such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874-75.   Dilatory conduct excludes, however, "sloppiness" ultimately resulting in an attorney's "untimely response to two court orders." *Id.*  "A history by counsel of ignoring these time limits is intolerable." *Poulis*, 747 F.2d at 868.

Mr. Burke's history of dilatory conduct starts on August 9, 2007 and continues to this day.  Similar to the Poulis's attorney, Mr. Burke has not sought discovery nor has he responded to any type of correspondence or communication from defense counsel.   Aside from the teleconferences with the Court, Mr. Burke's sole communication with Defense counsel was a demand letter in late November.   Mr. Burke also ignored the Court's initial instructions to work with defense counsel in providing the plaintiff for depositions and for an IME.

The fourth factor is whether the behavior was willful, contumacious, "flagrant bad faith," professionally irresponsible, strategic, or self-serving. *Adams*, 29 F.3d at 876.   An attorney's lack of plausible or reasonable justification for his/her conduct may indicate bad faith. *Curtis T. Bedwell and Sons, Inc. v. International Fidelity Ins. Co.,* 843 F.2d 683, 695 (3d Cir. 1988).   Here, Mr. Burke's consistent disregard of Court orders and instructions can only be logically explained as willful or in bad faith.   Mr. Burke failed to comply with the Court's instructions seven times.   Three of those times, the Court warned failure to comply would lead to dismissal.   Even in the face of

12

dismissal, Mr. Burke's decisions to arrive late to the hearing, provide the Court with photocopies of suspicious medical documentation, and to disregard the Court's pending order can only be explained as willful or in bad faith.   Thus, Mr. Burke's consistent disregard of the opportunities given to prosecute this case is inexcusable.

Mr. Burke's explanations for his history of dilatory conduct have been inconsistent.   During the first three teleconferences with the Court, he first apologized for not responding to the interrogatories or opposing counsel's correspondence.   He explained Mr. Carter was medically unavailable and was performing "odd jobs" during the entire discovery period.   Despite these representations to the Court, Mr. Burke then stated in his response to the motion to dismiss he never received the interrogatories or other correspondence from defense counsel.   In his response, he also used his father's illness as a justification for his inability to comply with the Court's orders.   Mr. Burke further identified Mr. Carter's medical unavailability for the next 60 days as the reason for an extension of deadlines.   As of January 8, 2008, less than a month from his request for extension of time, however, Mr. Burke stated Mr. Carter was immediately available for an IME and deposition. At the second oral argument considering the motion to dismiss, Mr. Burke presented two "medical" letters stating Mr. Carter would be medically unavailable for the next 60 days.   Mr. Burke's inconsistent representations and dilatory conduct are both troubling and intolerable.

The fifth factor is the effectiveness of alternative sanctions for the delinquent conduct. Before dismissing and "depriving the plaintiff of the right to have his claim adjudicated on the merits," courts must evaluate the alternative sanctions.   *Adams*, 29 F.3d at 876.   Courts are authorized "to impose on an attorney those expenses, including attorneys' fees, caused by unjustified failure to comply with discovery orders or pretrial orders." *Poulis*, 747 F.2d at 869. Attorney delay is usually appropriately sanctioned with "excess costs caused by such conduct directly upon the attorney, with an order that such costs are not to be passed on to the client." *Id.*   In this case, both

the client, Mr. Carter, and the attorney, Mr. Burke, have caused the delay.  Despite  the Court's numerous chances, warnings, and amended instructions, both Mr. Carter and Mr. Burke have failed to comply and prosecute this case.

The sanction must consider both Mr. Carter's and Mr. Burke's inexcusable conduct.  As to Mr. Carter's conduct, the sanction of dismissal is the most appropriate.  The Court has given him numerous chances to comply, and yet, he has disregarded these chances.  The Court instructed Mr. Carter on February 7, 2008  non-compliance with the Court's order would result in dismissal of his case.  He failed to attend and reschedule his IME.  Unlike the parties in *Poulis*, *Scarborough*, and *Dunbar*, Mr. Carter is personally responsible for the delay of this case.  Although Mr. Burke's conduct is also to blame, Mr. Carter also failed to make himself available during the discovery period, failed to appear for the IME, and failed to reschedule the IME knowing the case would be dismissed for not complying.  Mr. Carter has thus demonstrated personal responsibility.  *Contra Poulis*, 747 F.2d at 870 (affirming dismissal of case where party plaintiff was not personally responsible).

The Court also finds it appropriate to sanction Mr. Burke with the costs Ryobi and Sears incurred in its numerous attempts to obtain discovery.  Courts are authorized "to impose on an attorney those expenses, including attorneys' fees, caused by unjustified failure to comply with discovery orders or pretrial orders." *Poulis*, 747 F.2d at 869.  Mr. Burke's conduct and disregard for the Court's orders and numerous chances to comply are far more egregious than that of the Poulis's attorney.  *Id.* at 870.  Unlike the Poulis's attorney, Mr. Burke was put on notice of his discovery deficiencies on September 21, 2007, five months before his February trial date.  Mr. Burke, unlike the Poulis's attorney, had sufficient time to comply with the discovery requests and Court's orders. The Court also instructed Mr. Burke to produce the requested discovery a total of *seven* times (five teleconferences and two hearings), and the last four instructions contained the warning that failure

to comply would result in dismissal.  Even without warnings of dismissal, the Poulis's attorney's failure to answer interrogatories and to file a pretrial statement merited dismissal.  *Id.* at 868-69.  Mr. Burke's inexcusable conduct even in the face of the court's numerous warnings merits the imposition of costs and dismissal.  His conduct has caused Sears and Ryobi to incur $6,083.28,[9] in trying to obtain this discovery and in defending against this motion to dismiss for lack of prosecution.

    The final factor is meritoriousness of the claim or defense.  A claim or defense is meritorious when establishing the pleading's allegations at trial "would support recovery by plaintiff or would constitute a complete defense." *Adams*, 29 F.3d at 876-77.  Carter is suing Ryobi and Sears for negligence, products liability, breach of warranty, and punitive damages because he was injured by one of their alleged defective saws.  Ryobi and Sears asserted 31 affirmative defenses including assumption of risk, failure to state claim for which relief can be granted, and comparative negligence.[10] Mr. Carter's and Mr. Burke's conduct prevented Ryobi and Sears from assessing their case and filing any motion, aside from the motion to dismiss for lack of prosecution. *Contra Poulis*, 747 F.2d at 870 (defendants had filed a motion to dismiss prior to the district court dismissing for

---

[9] Defense counsel submitted a detailed bill for $6,193.78.  The Court deducted $110.50 from the initial scheduling of Mr. Carter's IME because at least one attempt would have been made  to schedule Mr. Carter's IME and deposition regardless of any non compliance.  The $110.50 includes the following: $13.00 on 10/5/07 in coordination and preparation for IME; $26 on 10/5/07 in teleconferences with Main Line Hand surgery regarding IME; $19.50 on 10/5/07 in drafting letter to Mr. Burke re IME; $13.00 on 10/5/07 in drafting letter to Mr. Rowe re IME; and $39 on 2/7/08, preparation for Mr. Carter's IME and deposition.

[10] Defendants asserted the following affirmative defenses: failure to state a cause of action upon which relief can be granted; comparative negligence; assumption of risk; any damages suffered were caused by actions or inactions outside defendants' control; statute of limitations; defendants were not negligent, careless, or reckless, and did not breach any duty; defendants did not proximately or actually cause the damages; product was not defective; product was not in the same condition as when defendants possessed it (i.e. abused or misused) when plaintiff was injured; warranty claims lack privity and failure to give timely notice of the alleged breach; warranty did not exist; defendants did not breach any warranty; complaint fails to state a claim for punitive damages; and right to incorporate new defenses and incorporate any defense asserted by remaining defendants.

lack of prosecution).

After considering all the relevant *Poulis* factors, the sanction of dismissal for Mr. Carter and the imposition of excess costs for Mr. Burke is merited.

An appropriate order follows.